**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Ayers v. Ayers*, **Slip Opinion No. 2024-Ohio-1833.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-1833

AYERS, APPELLEE, *v.* AYERS, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ayers v. Ayers*, Slip Opinion No. 2024-Ohio-1833.]**

*Domestic relations—Child support—R.C. 3119.01(C)(17)—R.C. 3119.01(C)(17) requires that the domestic-relations court's child-support order include an express determination of voluntary unemployment or underemployment as a condition precedent to imputing potential income for child-support-calculation purposes—Domestic-relations court's lack of express determination of voluntary employment was reversible error—Court of appeals' judgment reversed and cause remanded to domestic-relations court.*

(No. 2022-0560—Submitted March 1, 2023—Decided May 15, 2024)

CERTIFIED by the Court of Appeals for Wood County,

No. WD-21-010, 2022-Ohio-403.

_____

**DONNELLY, J.**

{¶ 1} In a child-support dispute involving an unemployed parent, the domestic-relations court must first determine whether the parent is voluntarily unemployed[1] before the court may proceed to impute potential income to that parent for purposes of calculating child support. We are asked to determine whether we must assume that the domestic-relations court properly determined that a parent was voluntarily unemployed when the court's child-support order is silent regarding voluntary unemployment but imputes potential income to the parent for child-support-calculation purposes. We hold that an assumption from silence in this context is improper. The plain language of R.C. 3119.01(C)(17)[2] requires that the domestic-relations court's order include an express determination of voluntary unemployment as a condition precedent to imputing potential income for child-support-calculation purposes. We therefore reverse the judgment of the Sixth District Court of Appeals, and we remand the cause to the trial court.

## BACKGROUND

{¶ 2} Appellee, Deborah Belleville, formerly known as Deborah Ayers, and appellant, David Ayers, were married in 2006. The couple had three children during the course of their marriage. Deborah filed a complaint for divorce in July 2019.

{¶ 3} At the time the divorce action began, David and Deborah were both employed with comparable incomes. David had been employed at CSX

---

1. This decision applies to both voluntary unemployment and voluntary underemployment. Any references to "voluntary unemployment" alone are merely for the sake of brevity.

2. Since the inception of this case, the General Assembly renumbered subdivisions within R.C. 3119.01 without making any substantive changes to the pertinent provisions of the statute. *See* 2018 Sub.H.B. No. 366 (recodifying R.C. 3119.01(C)(11) as R.C. 3119.01(C)(17)). For clarity and unless specified, references to former R.C. 3119.01(C)(11) will cite to R.C. 3119.01(C)(17). We note that effective April 3, 2024, R.C. 3119.01(C)(17) has been recodified as R.C. 3119.01(C)(18). *See* 2023 Am.Sub.H.B. No. 33.

Transportation as a load-engineering and design-services coordinator since June 2011. In February 2020, David's position was eliminated due to organizational changes. He remained unemployed at the time of the final divorce hearing, which took place over the course of three different days in August, September, and October 2020 in the Wood County Court of Common Pleas, Domestic Relations Division.

{¶ 4} David testified at the final divorce hearing that he was seeking employment but that the job market was "very small" due to the COVID-19 pandemic. Deborah testified that she believed that David could get a new job. The testimony of the parties and other witnesses at the final divorce hearing otherwise covered a great number of issues not germane to this appeal.

{¶ 5} After the final divorce hearing, the parties submitted requests for and proposals of findings of fact and conclusions of law. In David's proposed findings of fact and conclusions of law, he asserted: "[David] is now unemployed due to no fault of his own." In Deborah's proposed findings of fact and conclusions of law, she asserted: "While [David's] employment was terminated by [CSX], his unemployment has not been for over one year and new employment is very likely." She asserted that she should be awarded child support and that the amount should be calculated based on David's last base pay with CSX from 2019 plus the average of the annual bonus he received in 2017, 2018, and 2019.

{¶ 6} On December 9, 2020, the trial court issued an order that, among many other things, designated Deborah as the residential parent and legal custodian of the parties' three children and ordered David to pay child support. The court stated that under R.C. 3119.01(C)(9)(b), it could calculate child support based on the "potential income" of "a parent who is unemployed or underemployed." The court further stated that it could impute potential income to the unemployed parent by analyzing the factors listed in R.C. 3119.01(C)(17)(a)(i) through (xi). Of note, the court did not mention that under R.C. 3119.01(C)(17), it must first determine

that the parent "is voluntarily unemployed or voluntarily underemployed" before it may consult the factors enumerated in R.C. 3119.01(C)(17)(a)(i) through (xi) to impute potential income.

{¶ 7} In addressing Deborah's request to impute David's potential income, the trial court found that "David lost his job with CSX Transportation due to several organizational changes at CSX." The court also found that at the time, "the availability of employment opportunities [was] tight due to the * * * virus pandemic." However, it stated that "a vaccine should be available within the next six months or so." The court otherwise found that "David had substantial prior employment experience with CSX; he is well educated; he has no physical or mental disabilities; he does not have a felony conviction; and there is no evidence that David does not have the ability to earn the imputed income." The court then imputed potential income to David based on his previous earnings, adopting the amount calculated by Deborah in her proposed findings of fact and conclusions of law. The court ordered Deborah's attorney to prepare a final judgment consistent with the December 9, 2020 order.

{¶ 8} The trial court entered a final judgment entry of divorce on January 22, 2021. The entry is silent regarding David's employment situation. Yet the judgment entry states that the monthly child-support amount ordered was based on a calculation worksheet, which incorporated David's imputed potential income.

{¶ 9} David appealed the trial court's judgment to the Sixth District Court of Appeals, arguing, in pertinent part, that the trial court had erred in imputing his potential income for child-support purposes. 2022-Ohio-403, ¶ 18. David argued that the trial court had (1) decided he was involuntarily unemployed by stating that David lost his job due to "organizational changes" and (2) therefore improperly imputed his potential income. *Id.* at ¶ 19. The court of appeals disagreed, concluding that the trial court determined that David was voluntarily unemployed by considering several factors enumerated in R.C. 3109.01(C)(17)(a) to impute

potential income. *See id.* at ¶ 20. The Sixth District more generally held that R.C. 3119.01(C)(17) "does not require the trial court to expressly find [David] is voluntarily unemployed or underemployed, and it is sufficiently implied where the record reflects the trial court considered the factors to determine [David's] 'potential income' for child support purposes." *Id.* at ¶ 25. The Sixth District therefore affirmed the trial court's judgment. *Id.* at ¶ 42.

{¶ 10} In light of its holding regarding express versus implied findings of voluntary unemployment, the Sixth District granted David's motion to certify a conflict after determining that its judgment was in conflict with the judgment of the Ninth District in *Misleh v. Badwan*, 9th Dist. Summit No. 23284, 2007-Ohio-5677. We recognized that a conflict existed and ordered briefing on the following question certified by the Sixth District:

> "Does a trial court have to expressly find that a parent is voluntarily unemployed or underemployed as a condition precedent to imputing income for child support calculation purposes, or can the trial court's silence be construed as an implied finding that is sufficient to impute income?"

167 Ohio St.3d 1442, 2022-Ohio-2162, 189 N.E.3d 818, quoting 9th Dist. Wood No. WD-21-010, 2022 Ohio App. LEXIS 1361, at 9 (Apr. 26, 2022).

## ANALYSIS

{¶ 11} This certified-conflict case turns on the interpretation of R.C. 3119.01(C)(17). "[I]ssues of statutory construction constitute legal issues that we decide de novo." *New York Frozen Foods, Inc. v. Bedford Hts. Income Tax Bd. of Rev.*, 150 Ohio St.3d 386, 2016-Ohio-7582, 82 N.E.3d 1105, ¶ 8. We must focus first and foremost on the text of the statute. *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 10. If the text is clear and unambiguous, we

must apply it as written. *Id.* Unless a word has a specialized meaning or specific statutory definition, it must be taken in its usual, ordinary, or customary meaning. *See Coventry Towers, Inc. v. Strongsville*, 18 Ohio St.3d 120, 122, 480 N.E.2d 412 (1985); *see also* R.C. 1.42.

{¶ 12} The terms within the statutory scheme governing child-support orders are "mandatory in nature and must be followed literally and technically in all material respects." *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992), paragraph two of the syllabus; *see Rock v. Cabral*, 67 Ohio St.3d 108, 110, 616 N.E.2d 218 (1993) (requiring strict compliance with the requirements of child-support statutes).

### *The statutory regime*

{¶ 13} To calculate the amount of child support owed, the domestic-relations court must first determine the annual income of each parent. *See* R.C. 3119.021(A). The term "income" is defined as:

> (a) For a parent who is employed to full capacity, the gross income of the parent;
>
> (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.

R.C. 3119.01(C)(9). "Potential income" applies to "a parent who the court pursuant to a court support order * * * determines is voluntarily unemployed or voluntarily underemployed." R.C. 3119.01(C)(17). Once determined to be voluntarily unemployed, a parent's potential income may include:

6

(a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:

(i) The parent's prior employment experience;

(ii) The parent's education;

(iii) The parent's physical and mental disabilities, if any;

(iv) The availability of employment in the geographic area in which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) The parent's decreased earning capacity because of a felony conviction;

(xi) Any other relevant factor.

R.C. 3119.01(C)(17)(a)(i) through (xi).

{¶ 14} Thus, R.C. 3119.01(C)(17)'s plain language requires the domestic-relations court to make two specific determinations when calculating potential income. First, the court must determine that a parent's unemployment or underemployment was voluntary. R.C. 3119.01(C)(17). Second, the court must determine what the parent would have earned if fully employed, using the criteria enumerated in R.C. 3119.01(C)(17)(a)(i) through (xi).

### *The conflict among Ohio appellate districts*

**{¶ 15}** We have previously explained that the two questions of (1) a parent's voluntary unemployment and (2) the amount of potential income to be imputed to that parent are both questions of fact for the domestic-relations court that should not be disturbed on appeal absent an abuse of discretion. *Rock*, 67 Ohio St.3d at 112, 616 N.E.2d 218. But we have not addressed whether the domestic-relations court must make an *express* determination of voluntary unemployment before it is authorized to determine the amount of potential income to be imputed. The caselaw from Ohio courts of appeals on this latter issue is inconsistent.

**{¶ 16}** The Sixth District appears to be at one end of the spectrum by taking the bright-line position that the determination of voluntary unemployment should be inferred so long as the domestic-relations court considers the factors to impute potential income that are enumerated in R.C. 3119.01(C)(17)(a)(i) through (xi). 2022-Ohio-403 at ¶ 25. In other words, as long as the domestic-relations court completed step two, we should assume that it completed step one. On the opposite end of the spectrum is the judgment determined to be in conflict with the Sixth District's judgment. In *Misleh*, the Ninth District took the bright-line position that if the domestic-relations court fails to make an explicit finding of voluntary unemployment, it may not impute potential income. 2007-Ohio-5677 at ¶ 5-6. In other words, if the domestic-relations court does not explicitly state that it completed step one, it is prohibited from completing step two.

**{¶ 17}** We disagree with the approach taken by the Sixth District. And although we find the proper approach to be less formalistic and extreme as the approach taken by the Ninth District in *Misleh*, we agree that it is generally improper to infer from the domestic-relations court's silence that it made a proper determination of voluntary unemployment.

### *An express determination of voluntary unemployment is statutorily required*

{¶ 18} Remaining mindful of the fact that our inquiry is grounded in the text of the statute, we note that the language found in R.C. 3119.01(C)(17) has changed since the time of our decision in *Rock*, 67 Ohio St.3d at 112, 616 N.E.2d 218. The relevant statutory language at the time of *Rock* provided that "potential income" applies to " 'a parent that the court determines is voluntarily unemployed or voluntarily underemployed.' " *Id.* at 111, quoting former R.C. 3113.215(A)(5); Am.Sub.H.B. No. 591, 143 Ohio Laws, Part IV, 5957, 5998.

{¶ 19} Former R.C. 3113.215 was repealed effective March 22, 2001, and the pertinent language regarding "potential income" from that statute was enacted in former R.C. 3119.01(C)(11). *See* Am.Sub.S.B. No. 180, 148 Ohio Laws, Part V, 9782, 9788-9790, 10051-10052, 10055, 10482-10483. Before it was repealed, the pertinent provision of former R.C. 3113.215(A)(5) provided that "potential income" applied to "a parent that the court, or a child support enforcement agency * * * determines is voluntarily unemployed or voluntarily underemployed." 2000 Sub.H.B. No. 495, 148 Ohio Laws, Part III, 5309, 5319, 5321. The language enacted in former R.C. 3119.01(C)(11) provided that "potential income" applied to "a parent who the court *pursuant to a court support order*, or a child support enforcement agency *pursuant to an administrative child support order*, determines is voluntarily unemployed or voluntarily underemployed." (Emphasis added.) Am.Sub.S.B. No. 180, 148 Ohio Laws, Part V, at 10055. Although former R.C. 3113.215 was silent about how or when the domestic-relations court was to make the predicate determination of voluntary unemployment, R.C. 3119.01—both currently and as enacted—includes language specifying that there must be an order reflecting a determination of voluntary unemployment.

{¶ 20} One takeaway from the foregoing changes to the statutory language regarding "potential income" is that caselaw applying the language of former R.C. 3113.215(A)(5) is of limited value. The Sixth District's decision here was founded

on that caselaw. *See* 2022-Ohio-403 at ¶ 25, citing *Wheeler v. Wheeler*, 6th Dist. Ottawa No. OT-04-025, 2005-Ohio-1025, ¶ 26-27 (interpreting former R.C. 3113.215). The Sixth District held in *Wheeler* that the domestic-relations court need not expressly determine that a parent is voluntarily unemployed based on the fact that former R.C. 3113.215 was silent on the matter. *Wheeler* at ¶ 26. R.C. 3119.01(C)(17) is not so silent, and the reasoning set forth in *Wheeler* is thus no longer on point.

{¶ 21} Another takeaway from the changes to the statutory language regarding "potential income" is that the domestic-relations court must include a determination of voluntary unemployment in its order. It remains true that the substance of the court's determination of a parent's voluntary unemployment, as well as the substance of its decision to impute potential income to that parent, are factual questions that may not be disturbed on appeal absent an abuse of discretion. *Rock*, 67 Ohio St.3d at 112, 616 N.E.2d 218. But specific instructions that the determination of voluntary unemployment be "pursuant to a court support order," R.C. 3119.01(C)(17), indicate a mandatory rather than discretionary obligation, which must be "followed literally and technically in all material respects," *Marker*, 65 Ohio St.3d 139, 601 N.E.2d 496, at paragraph two of the syllabus.

{¶ 22} It is undisputed in this case that the trial court failed to articulate in any order or otherwise expressly determine that David was voluntarily unemployed. We conclude that the trial court's failure was error.

***The lack of an express determination of voluntary employment was reversible error in this case***

{¶ 23} Although R.C. 3119.01(C)(17) requires that a parent's voluntary employment be determined "pursuant to a court support order," that provision does not require a recitation of particular words. The formal requirements contained in R.C. 3119.01 assure the parties and appellate courts that the domestic-relations court adhered to the relevant substantive requirements and ensure that the domestic-

10

relations court's order is subject to meaningful appellate review. *See Marker* at 142. The precise wording is therefore inconsequential, but the domestic-relations court's order must clearly evince a finding that a parent's unemployment or underemployment is voluntary.

**{¶ 24}** In the present case, none of the trial court's statements in its December 2020 order or its January 2021 order may be interpreted as a determination that David was voluntarily unemployed. The court made findings that attributed David's initial unemployment to organizational changes of his employer, and it attributed his continued unemployment to the "tight" job market during the COVID-19 pandemic. Both of these findings point to a determination of *in*voluntary unemployment.

**{¶ 25}** The trial court did find that "David had substantial prior employment experience with CSX; he is well educated; he has no physical or mental disabilities; he does not have a felony conviction; and there is no evidence that David does not have the ability to earn the imputed income." These findings are more or less relevant[3] to establish a potential income that may be imputed to David under R.C. 3119.01(C)(17)(a), but they do not by themselves establish that David's lack of income at the time of the final hearing was voluntary under R.C. 3119.01(C)(17).

**{¶ 26}** The trial court's attributing David's initial unemployment to organizational changes of his employer and his continued unemployment to the "tight" job market during the COVID-19 pandemic may not be construed as a determination of voluntary unemployment, and the record did not contain overwhelming evidence that David was voluntarily unemployed. The court's decision imputing potential income to David for purposes of calculating child

---

3. The last of the trial court's findings was a misstatement of R.C. 3119.01(C)(17)(a)(vii): "[w]hether there is evidence that the parent has the ability to earn the imputed income." The court's apparent requirement for David to prove that he did not have the ability to earn the imputed potential income incorrectly shifted the burden of proof.

support was therefore reversible error.

## CONCLUSION

{¶ 27} For the foregoing reasons, we answer the certified-conflict question in the affirmative by holding that the domestic-relations court must expressly find that a parent is voluntarily unemployed or underemployed as a condition precedent to imputing potential income for child-support-calculation purposes. The trial court's failure to do so in this case was reversible error. We therefore reverse the judgment of the Sixth District Court of Appeals, and we remand the cause to the trial court for it to determine whether David was voluntarily unemployed in accordance with R.C. 3119.01(C)(17) and for further proceedings in accordance with that determination.

Judgment reversed

and cause remanded.

FISCHER, STEWART, and BRUNNER, JJ., concur.

KENNEDY, C.J., concurs in judgment only, with an opinion.

DEWINE, J., concurs in judgment only, with an opinion joined by DETERS, J.

_____

**KENNEDY, C.J., concurring in judgment only.**

{¶ 28} "[M]eaningful appellate review is precluded where a trial court's findings of fact and conclusions of law are inadequate to disclose the controlling facts or basis for the court's findings." *Blair Constr., Inc. v. McBeth*, 273 Kan. 679, 688, 44 P.3d 1244 (2002). And while Ohio law permits a child-support order to impute potential income to a voluntarily unemployed or underemployed parent, the trial court in this divorce case never made a finding that appellant, David Ayers, was voluntarily unemployed. Further, the trial court not only misstated the statutory standard for imputing potential income, but it also made findings indicating that Ayers was not voluntarily unemployed and that potential income

could not be imputed to him. For these reasons, I concur in the court's judgment reversing the judgment of the Sixth District Court of Appeals and remanding this matter to the trial court. I write separately, however, because my reasoning is different from that of the majority.

**Facts and Procedural History**

{¶ 29} CSX Transportation abolished Ayers's position and terminated his employment effective February 1, 2020. According to Ayers's testimony in the divorce proceeding, he was not fired and no replacement was hired. He accepted a severance package that allowed him to receive his regular pay for six months. Beginning on August 2, 2020, Ayers began receiving unemployment benefits, which provided him with $750 every two weeks for 26 weeks—a small fraction of what he had earned at CSX. The unemployment benefits became his sole source of income.

{¶ 30} As a benefit of his severance package, Ayers worked with an employment-coaching firm, LHH. He testified that although he had been seeking employment by using the networking skills that LHH had taught him, he had not yet had success. Ayers attributed his failure to find a job by the late summer and early fall of 2020 to disruptions in the economy that had been caused by the COVID-19 pandemic. He explained that in a normal economy, he would have already been employed; however, "due to [the pandemic], [it had] been difficult" and there had been few job opportunities in his field.

{¶ 31} The only evidence in the divorce proceeding indicating that Ayers could have found a job was conclusory statements made by appellee, Deborah Belleville, during her testimony, such as that Ayers "has the ability to get a job" and that "there are jobs out there." And Belleville provided the only testimony regarding the amount of potential income Ayers could earn—she asserted that Ayers could make the same salary he had made at CSX because "[h]e was able to before."

{¶ 32} In its child-support order, the trial court found that "[i]n February 2020 [Ayers] lost his job with CSX Transportation due to several organizational changes at CSX." The court also stated that "the availability of employment opportunities [was] tight due to the * * * virus pandemic" but that "a vaccine should be available within the next six months or so." Nonetheless, it imputed potential income to Ayers based on the earnings he had previously received from CSX. The court of appeals affirmed the trial court's judgment, finding no error. 2022-Ohio-403, ¶ 42.

### Imputing Income to an Unemployed Parent

{¶ 33} R.C. 3119.01(C)(9) defines "income" for purposes of calculating a parent's child-support obligation as including the "potential income" that a parent who is unemployed or underemployed could earn if fully employed. But R.C. 3119.01(C)(17) clarifies that a calculation of "potential income" applies to "a parent who the court pursuant to a court support order * * * determines is *voluntarily unemployed or voluntarily underemployed*." (Emphasis added.)

{¶ 34} Whether a parent is voluntarily unemployed or underemployed and the amount of potential income to be imputed to a parent found to be voluntarily unemployed or underemployed are matters to be determined by the trial court based on the facts and circumstances of each case. *Rock v. Cabral*, 67 Ohio St.3d 108, 111-112, 616 N.E.2d 218 (1993) (construing former R.C. 3113.215(A)(5)). Although these determinations are committed to the trial court's discretion, *id.* at 112, this court explained in *Rock* that "an appellate court must be able to ascertain from the trial court's journal entry * * * the trial court's reasons for imputing income to a child support obligor," *id.* at 113. Therefore, an appellate court must be able to determine from the entry imputing potential income to a parent that the trial court found that the parent's unemployment or underemployment was, in fact, voluntary.

**{¶ 35}** The trial court did not make that finding here. Further, it is unclear whether the trial court understood that it could impute potential income to Ayers only if it first found that his unemployment was voluntary. It stated in its child-support order that "[f]or a parent who is unemployed or underemployed, gross income can include any potential income of the parent." But that is not true. A trial court cannot impute income to a parent simply because he or she is unemployed—the parent must be *voluntarily* unemployed. By omitting the word "voluntary" from the above-quoted sentence, the trial court misstated the standard for imputing potential income to a parent. It is therefore not possible to infer that the trial court found that Ayers's unemployment was voluntary.

**{¶ 36}** Nor do the findings that the trial court made in its child-support order demonstrate that the court knew that potential income could be imputed to Ayers only if his unemployment was voluntary. In calculating Ayers's child-support obligation, the trial court noted in its order that "[i]n February 2020 [Ayers] lost his job with CSX Transportation due to several organizational changes at CSX." The court also stated that "the availability of employment opportunities [was] tight due to the * * * virus pandemic" but that "a vaccine should be available within the next six months or so." These findings tend to establish that at the time the court entered its order, Ayers's unemployment was involuntary—he had lost his job through no fault of his own while the pandemic made finding a new job difficult, if not impossible.

**{¶ 37}** The trial court then compounded its error by shifting the burden of proof. In deciding to impute potential income to Ayers, the court stated in its child-support order that "there is no evidence that [Ayers] does not have the ability to earn the imputed income." But as the majority correctly points out, Ayers did not have the burden to prove his inability to earn the imputed income. Rather, Belleville bore the burden to prove that Ayers was voluntarily unemployed. And she failed to carry that burden, because the only evidence that Ayers could have

found a job was her conclusory statements that Ayers "has the ability to get a job" and that "there are jobs out there." But Belleville was not qualified to give an expert opinion on the labor market, and she provided no evidence, such as local unemployment data or job postings, to support her statements.

{¶ 38} For these reasons, the trial court erred in imputing potential income to Ayers. In reviewing the trial court's child-support order, the court of appeals could only speculate that the trial court had made the finding of voluntary unemployment that was necessary to impute potential income to Ayers. Moreover, the facts in the record do not support such a finding. Therefore, I concur in the court's judgment reversing the judgment of the Sixth District Court of Appeals and remanding this matter to the trial court for further proceedings.

_____

**DEWINE, J., concurring in judgment only.**

{¶ 39} Before a trial court may impute income to a parent for purposes of calculating child support, it is required to determine that the parent is voluntarily unemployed or underemployed. In this case, the trial court made no such determination, so it is appropriate to reverse the judgments below.

{¶ 40} But the majority goes further. It also imposes a new requirement that a trial judge make an "express" determination of voluntary unemployment—a requirement that is not supported by the text of the relevant statute, R.C. 3119.01(C)(17). Because I would stick to the text of the statute, I cannot join the opinion of the majority and concur only in its judgment.

### *The Trial Court Failed to Find that the Father Was Voluntarily Unemployed*

{¶ 41} Ohio's child support statute requires a judge to impute "potential income" to a parent who is unemployed or underemployed. R.C. 3119.01(C)(9)(b). The imputation of potential income applies to "a parent who the court pursuant to a court support order * * * determines is voluntarily unemployed or voluntarily underemployed." R.C. 3119.01(C)(17). As the majority correctly explains,

> R.C. 3119.01(C)(17)'s plain language requires the domestic-relations court to make two specific determinations when calculating potential income. First, the court must determine that a parent's unemployment or underemployment was voluntary. R.C. 3119.01(C)(17). Second, the court must determine what the parent would have earned if fully employed, using the criteria enumerated in R.C. 3119.01(C)(17)(a)(i) through (xi).

Majority opinion, ¶ 14.

{¶ 42} Here, the trial court skipped directly to the second step. There is nothing in the relevant court order that includes a determination—explicit or implicit—that the father was voluntarily unemployed. Nor is there anything else in the record from which we could glean that the trial court considered the voluntariness issue. Indeed, one plausible reading of the court's order is that it believed that it could impute income based on unemployment alone. *See Ayers v. Ayers*, Wood C.P. No. 2019 DR 0090, 17 (Dec. 9, 2020) ("For a parent who is unemployed or underemployed, * * * a court can impute income to a parent after an analysis of the factors listed in R.C. 3119.01(C)(17)(a)(i)-(xi)").

### *We Should Stick to the Plain Language of the Statute*

{¶ 43} Because the trial court failed to make the necessary determination regarding voluntary unemployment, I concur in the majority's judgment reversing its decision. But I disagree with the majority's decision to go beyond the plain language of the statute. While disclaiming the need for "a recitation of particular words," majority opinion at ¶ 23, the majority edits R.C. 3119.01(C)(17) to add a requirement that trial courts must "expressly" find that unemployment is voluntary, *id.* at ¶ 27. This requirement is found nowhere in the statute.

**{¶ 44}** Nothing in the statute requires that the trial court's determination of voluntary unemployment be express. As the majority notes, R.C. 3119.01 simply requires that there "be an order reflecting a determination of voluntary unemployment." *Id.* at ¶ 19. Certainly an order can reflect that the court has made a determination of voluntary unemployment without including an explicit finding. Indeed, one can imagine a number of circumstances where an order makes it clear that the court determined that the parent was voluntarily unemployed, even though the order doesn't expressly recite words to that effect. Under the statute, such a determination is sufficient.

**{¶ 45}** What the majority outlines may well be the best practice for trial judges to follow in drafting child support orders. But it is not a statutory mandate. "This court expects a statutory requirement to be 'written * * * into the statute.' " (Ellipsis in original.) *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 172 Ohio St.3d 225, 2022-Ohio-4677, 223 N.E.3d 371, ¶ 62, quoting *Wheeling Steel Corp. v. Porterfield*, 24 Ohio St.2d 24, 27-28, 263 N.E.2d 249 (1970). The majority's new requirement is not. And in any case, "[i]t is our duty to apply the statute as the General Assembly has drafted it; it is not our duty to rewrite it." *Doe v. Marlington Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 12, 2009-Ohio-1360, 907 N.E.2d 706, ¶ 29. We should be reviewing court orders for compliance with statutes, not with atextual judge-made requirements.

### *Conclusion*

**{¶ 46}** Because the trial court failed to determine whether David Ayers was voluntarily unemployed, I concur in this court's judgment reversing the judgment of the Sixth District Court of Appeals and remanding the matter to the trial court. The majority goes further and not only reverses the decisions below but also adds a new requirement that is unsupported by statutory text. As a consequence, I concur only in the majority's judgment.

DETERS, J., concurs in the foregoing opinion.

_____

Bostdorff Legal, L.L.C., Elizabeth B. Bostdorff, for appellee.

Karin L. Coble, for appellant.

_____