[Cite as *Dunn v. Dunn*, 2025-Ohio-584.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kevin Dunn, | : | |
| Plaintiff-Appellant, | : | No.  24AP-421 |
| | | (C.P.C. No. 20DR-3577) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Heather Dunn, | : | |
| Defendant-Appellee. | : | |

———————————

D E C I S I O N

Rendered on  February 20, 2025

———————————

**On brief**: *Gary J. Gottfried Co, L.P.A.*, and *Gary J. Gottfried*, for appellant.  **Argued**: *Gary J. Gottfried*.

———————————

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

EDELSTEIN, J.

{¶ 1}  Plaintiff-appellant, Kevin Dunn, appeals from a decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting in part his motion to modify child support.  Defendant-appellee, Heather Dunn, pro se, did not file a brief in this action.  For the following reasons, we reverse.

## I.  Facts and Procedural History

{¶ 2}  Appellant and appellee were married April 11, 2005 and have three children.  On November 20, 2020, the trial court entered a decree of dissolution of marriage.  The parties' initial shared parenting plan provided the minor children would live with appellee and awarded parenting time to appellant.

{¶ 3} On August 7, 2023, the trial court entered an agreed judgment entry modifying the parties' shared parenting plan. Under the modified shared parenting plan, appellant was designated the residential parent for the two oldest children and appellee remained the residential parent for the youngest child. In the agreed judgment entry, the parties modified appellant's child support obligation, reducing it to zero dollars per month.

{¶ 4} Subsequently, on November 6, 2023, appellant filed a motion to enforce the terms of the parties' settlement or in the alternative to modify child support. Appellant requested the trial court either enforce the parties' August 7, 2023 agreement to modify his child support obligation or to modify his child support obligation and deviate his child support obligation to zero dollars per month.

{¶ 5} By the time of the May 29, 2024 hearing on appellant's motion, the parties' oldest child had emancipated and graduated from high school. (Tr. at 96.) During the hearing, appellant testified he began working as an attorney with Plank Law Firm in 2018. (Tr. at 95.) Appellant stated he is a "W-2[] employee" and that his income is contingent upon receipt of a percentage of what his clients pay. (Tr. at 95, 104.) Appellant provided his W-2 tax forms from Plank Law Firm showing his earnings for the previous three years. (Tr. at 102.) In 2021, appellant earned $70,030 from the law firm. (Tr. at 102.) In 2022, appellant earned $95,725 from the law firm. (Tr. at 102-103.) In 2023, appellant earned $132,678 from the law firm. (Tr. at 103.) Though he did not have tax forms available for 2024, appellant estimated he had made approximately $33,000 year-to-date from his employment with Plank Law Firm. (Tr. at 104.)

{¶ 6} Prior to 2024, appellant said he also worked as the sole employee for Buckeye Investors, LLC ("Buckeye Investors"). (Tr. at 104-06, 165.) Appellant testified his employment with Buckeye Investors began in 2013 and lasted until Buckeye Investors discontinued their business and liquidated its properties. (Tr. at 105, 112.) Appellant did not provide tax forms from his employment with Buckeye Investors, but he estimated his income from Buckeye Investors in both 2021 and 2022 to be between $72,000 and $74,000, while his estimated income from Buckeye Investors in 2023 was $74,000. (Tr. at 104, 106.) These amounts were in addition to what appellant earned from Plank Law Firm in the same years. (Tr. at 166-67.) Appellant testified that as of January 2024, he was

employed full-time as an attorney with Plank Law Firm and no longer worked for, or would receive any further income from, Buckeye Investors. (Tr. at 103, 105-06, 164.)

{¶ 7} Following the hearing, the trial court issued a June 12, 2024 decision granting in part appellant's motion to modify child support. For the period between August 7, 2023 and May 24, 2024, when the oldest child graduated from high school, the trial court ordered appellant to pay child support to appellee in the amount of $123.36 per month. From May 25, 2024 going forward, the trial court ordered appellant to pay child support to appellee in the amount of $497.19 per month. The trial court reached these amounts after determining appellant's annual gross income to be $172,811. The trial court stated it calculated appellant's income by using a three-year average of his income, including his earnings from both Plank Law Firm and Buckeye Investors. (June 12, 2024 Decision at 2, attached Ct.'s Ex. B and C.) Appellant timely appeals.

## II. Assignments of Error

{¶ 8} Appellant raises the following three assignments of error for our review:

[I.] Whether the trial court committed an abuse of discretion when it included in the determination of the Plaintiff Appellant's gross income for child support purposes income which was nonrecurring or unsustainable as those terms are defined by the Ohio Revised Code 3119.01(C)(14).

[II.] Whether the trial court abused its discretion and committed error when it imputed income to the Plaintiff Appellant equal to his salary at Buckeye Investors LLC when there was no evidence that the Plaintiff Appellant was voluntarily underemployed.

[III.] Whether the trial court abused its discretion and committed error when it imputed income to the Plaintiff Appellant without any evidence as required by [] R.C. 3119.01(C)(18).

## III. Standard of Review and Applicable Law

{¶ 9} A trial court has discretion to determine child support obligations, and an appellate court will not disturb the trial court's child support determination unless the trial court has abused its discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable.

*Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *State ex rel. Deblase v. Ohio Ballot Bd.*, 2023-Ohio-1823, ¶ 27. A trial court does not abuse its discretion in making an order of child support where some competent, credible evidence supports the decision. *Weaver v. Weaver*, 2017-Ohio-4087, ¶ 9 (10th Dist.), citing *Ross v. Ross*, 64 Ohio St.2d 203, 208 (1980).

{¶ 10} Pursuant to Ohio's child support statutes, when issuing an order of child support, the trial court must calculate the amount of support "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of Chapter 3119." R.C. 3119.02. The resulting child support amount from the use of the basic child support schedule and applicable worksheet is presumed to be the correct amount due. R.C. 3119.03. After considering the factors set forth in R.C. 3119.23, however, the trial court may deviate from the guideline amount of child support if it determines the guideline amount "would be unjust or inappropriate and therefore not in the best interest of the child." R.C. 3119.22.

## IV. First Assignment of Error—Nonrecurring or Unsustainable Income

{¶ 11} In his first assignment of error, appellant argues the trial court abused its discretion in calculating his gross income for purposes of child support. More specifically, appellant asserts the trial court erroneously determined his gross income based on a nonrecurring or unsustainable source of income as defined by R.C. 3119.01(C)(14).

{¶ 12} To calculate the amount of child support, the trial court must first determine each parent's annual income. *Ayers v. Ayers*, 2024-Ohio-1833, ¶ 13, citing R.C. 3119.021(A). The child support statute defines "income" as:

> (a) For a parent who is employed to full capacity, the gross income of the parent;
>
> (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.

R.C. 3119.01(C)(10). "Gross income" does not include "[n]onrecurring or unsustainable income or cash flow items." R.C. 3119.01(C)(13)(e). " 'Nonrecurring or unsustainable income or cash flow item' means an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to

continue to receive on a regular basis.' " R.C. 3119.01(C)(14). "Determination of whether a particular type of income is 'nonrecurring or unsustainable' requires a close review of the specific facts in a given case." *Wolf-Sabatino v. Sabatino*, 2014-Ohio-1252, ¶ 28 (10th Dist.).

{¶ 13} Appellant argues the trial court abused its discretion when it determined his annual gross income by considering his prior earnings from Buckeye Investors because any income attributable to that employment is nonrecurring or unsustainable. In ruling on appellant's motion to modify child support, the trial court found appellant worked as a property manager for Buckeye Investors prior to 2024 but that Buckeye Investors discontinued its business and liquidated all its properties. The trial court additionally found appellant "is no longer employed through [Buckeye Investors] and no further income from that source is anticipated." (Decision at 3.) We agree with appellant that based on the evidence presented at the hearing and the trial court's own findings, appellant's prior earnings from his employment with Buckeye Investors is nonrecurring or unsustainable income under R.C. 3119.01(C)(14). *See Bruno v. Bruno*, 2005-Ohio-3812, ¶ 14 (10th Dist.) ("because there was no evidence presented that appellant expected to continue to receive on a regular basis the same income he received for the last six months of 2003, such income was 'unsustainable' " within the meaning of the child support statute and the trial court could not utilize those earnings to establish appellant's gross income). Thus, because the trial court included appellant's nonrecurring or unsustainable income when it calculated appellant's gross income, the trial court abused its discretion.

{¶ 14} We sustain appellant's first assignment of error.

## V. Second Assignment of Error–Voluntary Underemployment

{¶ 15} In his second assignment of error, appellant argues the trial court abused its discretion when it imputed income to him without first finding he was voluntarily underemployed.

{¶ 16} As noted above, R.C. 3119.01(C)(10) defines "income" as:

> (a) For a parent who is employed to full capacity, the gross income of the parent;

(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.

To calculate potential income, the trial court must (1) make a determination that a parent's unemployment or underemployment is voluntary, and (2) determine what the parent would have earned if fully employed using the criteria set forth in R.C. 3119.01(C)(18)(a)(i) through (xi). *Ayers*, 2024-Ohio-1833 at ¶ 14, citing former R.C. 3119.01(C)(17).[1] To satisfy the statutory requirement, the trial court "must expressly find that a parent is voluntarily unemployed or underemployed as a condition precedent to imputing potential income for child-support-calculation purposes," and the failure to make such express findings constitutes reversible error. *Id*. at ¶ 27.

{¶ 17} Appellant argues the trial court did not make the required determination that he was voluntarily underemployed before imputing income to him. Although the trial court did not expressly state it was imputing income to appellant, the trial court included both appellant's earnings as an attorney and his past earnings as an employee of Buckeye Investors when it calculated appellant's gross income for the period of May 25, 2024 going forward. By including the earnings from appellant's work at Buckeye Investors, a position the evidence demonstrated appellant no longer had and would not have again in the future, the trial court necessarily imputed that income to appellant and effectively calculated his potential income. The trial court did so without making the statutorily required threshold determination that he was voluntarily underemployed under R.C. 3119.01(C)(18). *Ayers* at ¶ 27. Thus, we agree with appellant that the trial court erred in failing to make the required determinations pursuant to R.C. 3119.01(C)(18) before imputing income to him. *Ayers* at ¶ 12, quoting *Marker v. Grimm*, 65 Ohio St.3d 139 (1992), paragraph two of the syllabus ("[t]he terms within the statutory scheme governing child-support orders are 'mandatory in nature and must be followed literally and technically in all material respects' ").

{¶ 18} Because the trial court failed to make the required statutory determinations, we must remand the matter to the trial court to issue a decision consistent with the requirements of R.C. Chapter 3119. We sustain appellant's second assignment of error.

---

[1] Effective April 3, 2024, former R.C. 3119.01(C)(17) has been recodified as R.C. 3119.01(C)(18). 2023 Am.Sub.H.B. No. 33.

## VI. Third Assignment of Error–Imputed Income

{¶ 19} In his third and final assignment of error, appellant argues the trial court abused its discretion in imputing income to him without evidence that would satisfy R.C. 3119.01(C)(18). Our resolution of appellant's first and second assignments of error require reversal of the trial court's decision and remand for the trial court to properly determine appellant's income and comply with the requirements of R.C. Chapter 3119. Accordingly, appellant's third assignment of error is moot, and we need not address it. *Croce v. Ohio State Univ. Bd. of Trustees*, 2024-Ohio-2138, ¶ 67 (10th Dist.), citing *State v. Gideon*, 2020-Ohio-5635, ¶ 26 ("an assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by an appellate court"), and App.R. 12(A)(1)(c) (an appellate court must decide each assignment of error "[u]nless an assignment of error is made moot by ruling on another assignment of error").

## VII. Disposition

{¶ 20} Based on the foregoing reasons, the trial court abused its discretion in determining appellant's income and erred in making its award of child support. Having sustained appellant's first and second assignments of error, rendering moot his third assignment of error, we reverse the decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, and remand the matter to that court for further proceedings consistent with this decision.

*Judgment reversed; cause remanded.*

JAMISON, P.J. and DORRIAN, J., concur.