[Cite as *Ayers v. Ayers*, 2025-Ohio-1848.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Deborah Ayers

        Appellee

v.

David Ayers

        Appellant

Court of Appeals No.  WD-24-061

Trial Court No. 20190DR00090

**DECISION AND JUDGMENT**

Decided: May 23, 2025

* * * * *

Elizabeth B. Bostdorff, for appellee.

Karin L. Coble, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} Appellant, David Ayers, appeals from an amended order and final judgment entry of divorce entered by the Wood County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, the trial court's judgment is affirmed.

**Statement of the Case and the Facts**

{¶ 2} Appellee, Deborah Ayers, filed a complaint for divorce against David in July 2019. In temporary orders, the magistrate named Deborah the residential parent of the parties' three minor children and ordered that there would be no child support. At the time these orders were issued, Deborah was earning approximately $93,000 per year as a teacher and David was earning approximately $110,000 per year as a load-engineering and design-services coordinator at CSX Transportation.

{¶ 3} In February 2020, David lost his job when his position at CSX Transportation was eliminated due to organizational changes. He remained unemployed at the time of the final divorce hearing, which took place over the course of three days in August, September, and October 2020.

{¶ 4} David testified at the final divorce hearing that he was actively seeking employment and that although the job market was "very small" due to the COVID-19 pandemic, recent reports showed that "things [were] getting a little better." He stated that following his termination, he began working with LHH, an employment coaching/placement firm that was provided to him by CSX. According to David, he and LHH had been working together on David's resume, "on LinkedIn," and on "connecting in networking to get positions for another job." He stated that although he had been in contact with hiring managers to see "who would be interested in [his] skill set," he had not met with any success. David conceded that he had not applied for any positions, nor had he sent out any resumes or made any cold calls.

2.

{¶ 5} Debora testified that David, who has a bachelor's and master's degree in engineering, had the ability to get a job and that there was "no reason" that David could not earn as much as he did in his previous position, as "there [were] lots of jobs out there."

{¶ 6} On December 9, 2020, the trial court issued an order that designated Deborah as the residential parent and legal custodian of the children and ordered David to pay child support. The court stated that under R.C. 3119.01(C)(9)(b), it could calculate child support based on the "potential income" of a parent who was "unemployed or underemployed." The court further stated that it could impute potential income to the unemployed parent by analyzing the factors listed in R.C. 3119.01(C)(17)(a)(i) through (xi).[1]

{¶ 7} In addressing Deborah's request to impute David's potential income, the trial court found that "David had substantial prior employment experience with CSX; he is well educated; he has no physical or mental disabilities; he does not have a felony conviction; and there is no evidence that David does not have the ability to earn the imputed income." The trial court then imputed potential income to David based on his previous earnings.

---

[1] We note that effective April 3, 2024, R.C. 3119.01(C)(17) has been recodified as R.C. 3119.01(C)(18). For purposes of clarity and consistency in this case, we will continue to refer to former R.C. 3119.01(C)(17) in our analysis.

3.

{¶ 8} The trial court entered a final judgment entry of divorce on January 22, 2021. The judgment entry states that the monthly child-support amount ordered was based on a calculation worksheet that incorporated David's imputed potential income.

{¶ 9} David appealed the trial court's judgment to this court, arguing in part that the trial court's acknowledgement that David had lost his job due to "organizational changes" evidenced a determination on the part of the trial court that David was involuntarily unemployed. David asserted that given this alleged determination of involuntary unemployment, the trial court improperly imputed potential income to him and, as a result, improperly calculated child support. This court disagreed with David's analysis and discerned a determination by the trial court not that David was involuntarily unemployed but that he was voluntarily unemployed. In support of this conclusion, this court noted the trial court's consideration of several factors enumerated in R.C. 3109.01(C)(17)(1). In deciding the appeal, this court more generally held that R.C. 3119.01(C) "does not require the trial court to expressly find [a party] is voluntarily unemployed or underemployed," and that voluntary unemployment or underemployment "is sufficiently implied where the record reflects the trial court considered the factors to determine [a party's] 'potential income' for child support purposes." *Ayers .v Ayers*, 2022-Ohio-403, ¶ 25 (6th Dist.). Applying this holding to the facts of the case, this court affirmed the trial court's judgment.

{¶ 10} David moved to certify a conflict, arguing that this court's holding regarding express versus implied findings of voluntary unemployment was in conflict with the judgment of the Ninth District Court of Appeals in *Misleh v. Badwan*, 2007-

4.

Ohio-5677 (9th Dist.). This court granted David's motion and certified the following question:

> Does a trial court have to expressly find that a parent is voluntarily unemployed or underemployed as a condition precedent to imputing income for child support calculation purposes, or can the trial court's silence be construed as an implied finding that is sufficient to impute income?

The Ohio Supreme Court recognized the existence of a conflict and ordered briefing on the question.

{¶ 11} On May 15, 2024, the Ohio Supreme Court issued a decision wherein it held that "[i]n a child-support dispute involving an unemployed parent, the domestic-relations court must first determine whether the parent is voluntarily unemployed before the court may proceed to impute potential income to that parent for the purposes of calculating child support." *Ayers .v Ayers*, 2024-Ohio-1833, ¶ 1. That is, "[f]irst, the court must determine that a parent's unemployment or underemployment was voluntary," and "[s]econd, the court must determine what the parent would have earned if fully employed, using the criteria enumerated in R.C. 3119.01(C)(17)(a)(i) through (xi)." *Id.* at ¶ 14.

{¶ 12} Applying this holding to the Ayers' case, the Ohio Supreme Court found that the trial court's failure to expressly find that David was voluntarily unemployed or underemployed as a condition precedent to imputing potential income for child-support-calculation purposes was reversible error. *Id.* at ¶ 27. The judgment of this court was reversed, and the matter was remanded to the trial court "for it to determine whether

5.

David was voluntarily unemployed in accordance with R.C. 3119.01(C)(17) and for further proceedings in accordance with that determination." *Id.*

{¶ 13} Upon remand, the trial court held a pretrial with counsel for the parties on July 23, 2024. Following the pretrial, the trial court issued an order stating:

> The court and counsel for the parties reviewed the decision of the Ohio Supreme Court, *Ayers v. Ayers*, 2024-Ohio-1833. Counsel concurred with the court that no further taking of evidence or further briefing would be appropriate and that the court should review the record and evidence of this action as of December 9, 2020. The Court would then determine whether Defendant David Ayers was voluntarily unemployed in accordance with R.C. 3119.01(C)(17).

{¶ 14} On August 12, 2024, the trial court issued an amendment to the order filed on December 9, 2020, and an amendment to the final judgment entry of divorce filed on January 22, 2021. Both entries, journalized on August 12, 2024, sought to amend the previously issued order and final judgment entry and to issue findings consistent with the Ohio Supreme Court decision in *Ayers*, 2024-Ohio-1833. Within the amendment to the order, the trial court relevantly stated:

> In February 2020 David lost his job with CSX Transportation due to several organizational changes at CSX…. David testified that he has been networking in an attempt to secure new employment. David also testified that he has not filed any job applications, he has not sent out any resumes, and he is [sic] not cold called any potential employers.
>
> The court determines that David is voluntarily unemployed. The court will review the applicable R.C. 3109.01(C)(17) factors. David had substantial prior employment experience with CSX; he is well educated; he has no physical or mental disabilities; he does not have a felony conviction; and there is no evidence that David does not have the ability to earn the

imputed income. The court does note that the availability of employment opportunities is tight due to the present virus pandemic but that a vaccine should be available within the next six months or so. Therefore the court will impute a total gross annual income to David of $112,613.33.

And within the amendment to the final judgment entry of divorce, the trial court first reiterated its finding that David was voluntarily unemployed and then imputed income to David in the amount of $112,613.33.

## Assignments of Error

{¶ 15} On appeal, David asserts the following assignment of error:

I.    The trial court's determination that Mr. Ayers is voluntarily unemployed and its decision to impute income to him was an abuse of discretion.

II.    The trial court abused its discretion by splitting Mr. Ayers' 2019 bonus with Mrs. Ayers in the property division, and then using that same income for child support purposes.

## Law and Analysis

**The trial court did not abuse its discretion in finding that David was voluntarily unemployed and therefore did not abuse its discretion in imputing income to him.**

{¶ 16} As indicated above, a trial court deciding a child-support dispute involving an unemployed parent must first determine whether the parent is voluntarily unemployed; if the answer is yes, the trial court may then proceed to impute potential income to that parent for purposes of calculating child support. *Ayers*, 2024-Ohio-1833, ¶ 1. Potential income may include "[i]mputed income that the court or agency determines the parent

would have earned if fully employed." R.C. 3119.01(C)(17)(a). In making this determination, the court must consider the following criteria:

(i)    The parent's prior employment experience;

(ii)   The parent's education;

(iii)  The parent's physical and mental disabilities, if any;

(iv)   The availability of employment in the geographic area in which the parent resides;

(v)    The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi)   The parent's special skills and training;

(vii)  Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix)   The parent's increased earning capacity because of experience;

(x)    The parent's decreased earning capacity because of a felony conviction;

(xi)   Any other relevant factor.

R.C. 3119.01(C)(17)(a)(i) through (xi).

{¶ 17} "[T]he question whether a parent is voluntarily (i.e., intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal." *Rock v. Cabral*, 67 Ohio St.3d 108, 112 (1993); *see also Fitzgerald v. Fitzgerald*, 2021-Ohio-751, ¶ 54 (6th Dist.); *Abbott v. Abbott*, 2007-Ohio-5308, ¶ 31 (6th Dist.). Abuse of

8.

discretion connotes more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Id.*; *see also Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 18} In his first assignment of error, David argues only that the trial court's determination that he is voluntarily unemployed was an abuse of discretion. In this case, the trial court pointed out on remand that David, despite his alleged networking attempts, had not submitted any job applications or resumes and had not made any cold calls to potential employers since his job at CSX was terminated in February 2020. Given these facts -- and especially in light of the trial court's additional unrebutted findings that David is well educated and has no physical, mental or legal disability -- we fail to find an abuse of discretion in the trial court's determination that David is voluntarily unemployed.

{¶ 19} David complains that the trial court "only used the statutory factors of R.C. 3119.01(C)(17)" in making its determination of voluntary unemployment. This is patently not the case, where, upon remand, the trial court began by enumerating facts unrelated to determining potential income that specifically suggested that David's unemployment situation was voluntary or intentional, including David's failure to submit even one job application or resume and his failure to make any cold calls. Although the Ohio Supreme Court found that the trial court's earlier findings related to R.C. 3119.01(C)(17)(a) factors were not sufficient "by themselves" to establish a finding of voluntary unemployment, we find that findings indicating David's lack of any disability

9.

are relevant to the question of the voluntariness of his unemployment. *See Ayers*, 2024-Ohio-1833, at ¶ 25.

{¶ 20} Next, David argues that his "receipt of unemployment benefits constitutes a determination that [his] unemployment was involuntary" and that to hold otherwise would be to implicitly accuse David of unemployment compensation fraud. In support of this argument, appellant cites to R.C. 4141.29 for the proposition that unemployment benefits are compensation for a "loss of remuneration due to involuntary total or partial unemployment." There is no question in this case that David's employment was involuntarily terminated in February 2020. But the trial court did not abuse its discretion in concluding for purposes of making a child support determination that at some point during the approximately nine months that elapsed between February 2020 and December 9, 2020, David, through his own actions and omissions, became voluntarily unemployed. We decline to find that the trial court's conclusion is in any way tantamount to an accusation of unemployment compensation fraud.

{¶ 21} Finally, David argues that even if Deborah presented a prima facie case that he was voluntarily unemployed, he "rebutted it with the greater weight of the evidence." Although Deborah's own testimony that David "has the ability to get a job" and that "there are jobs out there," is far from compelling, there was ample other evidence in this case to suggest that David, at some point after his initial termination, became intentionally and voluntarily unemployed. We do not find that the trial court acted outside its discretion when after weighing David's undisputed failures to act against his purported efforts in working with the employment coach, it concluded that David was voluntarily

10.

unemployed. The Ohio Supreme Court's comment that "[t]he trial court's attributing David's initial unemployment to organizational changes of his employer and his continued unemployment to the 'tight' job market during the COVID-19 pandemic may not be construed as a determination of voluntary unemployment," while relevant to the trial court's pre-amendment decisions, is of no consequence in the instant proceeding, where the trial court relied upon additional facts that amply support a finding of voluntary unemployment. *See Ayers*, 2024-Ohio-1833 at ¶ 26.

{¶ 22} For the foregoing reasons, David's first assignment of error is found not well-taken.

**David waived any argument concerning the use of David's 2019 bonus for child support purposes.**

{¶ 23} David argues in his second assignment of error that the trial court abused its discretion in dividing his 2019 bonus with Deobrah in the property division and then using that same income for child support purposes. The issue of David's bonus being included in the child support award was not raised, but could have been raised, in the first appeal and, therefore, it has been waived. *See King v. King*, 2014-Ohio-5836, ¶ 20 (the law of the case doctrine precludes a litigant from attempting to rely on arguments at a retrial which were fully pursued, or available to be pursued, in a first appeal). The only issue before the trial court on remand was whether or not David was voluntarily unemployed. Appellant's second assignment of error is found not well-taken.

11.

## Conclusion

**{¶ 24}** The judgment of the Wood County Court of Common Pleas, Domestic

Relations Division, is affirmed. Appellant is ordered to pay the costs of appeal pursuant

to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
See, also, 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.

JUDGE

Myron C. Duhart, J.

JUDGE

Charles E. Sulek, P.J.
CONCUR.

JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.